**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

FILED

02 JUL 30  AM II: 37

U.S. DISTRICT COURT
N.D. OF ALABAMA

CAHABA RIVER SOCIETY and )
ALABAMA ENVIRONMENTAL )
COUNCIL, INC., )
                                     )
        **Plaintiffs,** )
                                     )        **Civil Action No. CV-01-S-1725-S**
vs. )
                                     )
GOLD KIST, INC., )        ENTERED
                                     )
        **Defendant.** )
                                        JUL 3 0 2002

### MEMORANDUM OPINION

Plaintiffs, the Cahaba River Society and the Alabama Environmental Council, Inc., filed this action pursuant to section 505 of the Federal Water Pollution Control Act, 33 U.S.C. § 1365(a)(1), to remedy violations by Gold Kist, Inc. of its National Pollution Discharge Elimination System ("NPDES") permit. Defendant moved to dismiss the complaint pursuant to either Federal Rule of Civil Procedure 12(b)(1), for lack of subject matter jurisdiction, or, alternatively, Rule 12(b)(6), for failure to state a claim upon which relief can be granted. The asserted ground underlying defendant's motion is that this suit is barred by 33 U.S.C. § 1319(g)(6)(A)(ii), because the Alabama Department of Environmental Management ("ADEM") allegedly has "commenced and is diligently prosecuting an action" against defendant under a state law "comparable to" 33 U.S.C. § 1319(g). (Doc. no. 8.)

Defendant filed an evidentiary submission in support of its motion to dismiss. The court accordingly notified the parties that it intended to treat defendant's motion as a motion for summary judgment under Federal Rule of Civil Procedure 56.[1] After plaintiffs filed materials in opposition

---

[1] If on a motion to dismiss for failure to state a claim upon which relief can be granted, filed pursuant to Rule 12(b)(6), matters are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. *See* Fed. R. Civ. P. 12(b); *Brooks v. Blue Cross and Blue Shield of Florida, Inc.,* 116 F.3d 1364, 1371 (11th Cir. 1997).



to defendant's motion, defendant responded by filing a motion to strike portions of an affidavit by Barry Sulkin, included in plaintiffs' evidentiary submission. (Doc. no. 15.) Defendant also filed a motion for leave to file a reply brief in support of its motion for summary judgment, with the proposed reply brief attached thereto. (Doc. no. 17.)

Federal Rule of Civil Procedure 56(c) provides, in part, that summary judgment not only is proper, but "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). Thus, "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2553, 91 L.Ed. 2d. 265 (1986).

> In making this determination, the court must review all evidence and make all reasonable inferences in favor of the party opposing summary judgment.
>
> The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case. The relevant rules of substantive law dictate the materiality of a disputed fact. A genuine issue of material fact does not exist unless there is sufficient evidence favoring the nonmoving party for a reasonable jury to return a verdict in its favor.

*Chapman v. AI Transport*, 229 F.3d 1012, 1023 (11th Cir. 2000) (en banc) (quoting *Haves v. City of Miami*, 52 F.3d 918, 921 (11th Cir. 1995)) (internal quotation marks and citations omitted); *see also United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1437 (11th Cir. 1991) (en banc).

Upon consideration of the pleadings, evidentiary submissions, and briefs, the court concludes

as follows: (1) defendant's motion for leave to file a reply brief is due to be granted, (2) defendant's motion for summary judgment is due to be denied; and (3) defendant's motion to strike portions of Sulkin's affidavit is deemed moot.[2]

## I. SUMMARY OF FACTS

### A.    Defendant's NPDES Permit

Defendant operates a poultry processing plant in Trussville, Alabama. Acting pursuant to 33 U.S.C. § 1342 and Alabama Code § 22-22A-5(10) (1975 (1997 Replacement Vol.), ADEM issued a National Pollution Discharge Elimination System ("NPDES") permit on August 30, 1994, which allowed defendant to discharge wastewater associated with its poultry processing operations at the Trussville facility into an unnamed tributary of the Little Cahaba Creek.[3] This NPDES permit, number AL 0003395 (hereinafter the "Permit"), became effective September 1, 1994, and expired on August 31, 1999.[4] Defendant timely applied for a renewal of the Permit, and ADEM administratively extended the terms of the Permit while a new draft permit was pending.[5] Although it is unclear from the record whether ADEM has issued defendant a renewed final NPDES permit since this action was filed, the parties do not appear to dispute that the effluent limitations and other requirements of the Permit were applicable at all times relevant to plaintiffs' claims.

---

[2]The court concludes that defendant's motion to strike is moot at this time because defendant's motion for summary judgment is due to be denied irrespective of whether the court considers any portion of Sulkin's affidavit. Should the court subsequently be faced with another dispositive motion or other proceeding in connection with which plaintiffs offer Sulkin's affidavit as evidence, defendant may at that time renew its motion to strike it.

[3]*See* Evidentiary Submission in Support of Plaintiffs' Response to Gold Kist's Motion for Summary Judgment (doc. no. 12) (hereinafter "Plaintiffs' Evidentiary Submission"), Tab 2.

[4]*Id.*

[5]Complaint (doc. no. 1) ¶ 28.

**B.     Effluent Limitations and Alleged Violations Thereof**

Pursuant to the terms of the Permit, defendant is required to comply with effluent limitations

for ammonia nitrogen ("NH$_3$-N"), Total Kjeldahl Nitrogen ("TKN"), Biochemical Oxygen Demand

("BOD"), and fecal coliform.  In their complaint filed July 11, 2001, and in the amendment thereto

filed May 13, 2002, plaintiffs allege that Discharge Monitoring Reports ("DMRS") submitted by

defendant to ADEM show that defendant exceeded the Permit's effluent limitations for each of these

pollutants, as follows: (1) the daily maximum for NH$_3$-N on fifteen days between March 12, 1996

and March 29, 2000;[6] (2) the daily maximum for TKN on twenty-two days between October 7, 1996

and December 27, 2000;[7] (3) the monthly average for TKN in seven months between October 1996

and December 2000;[8] (4) the daily maximum for BOD on twelve days between December 3, 2000

and February 21, 2001;[9] (5) the monthly average for BOD in December 2000, January 2001, and

February 2001;[10] (6) the daily maximum for fecal coliform on July 21 and 22, 1998, and January 31,

1999;[11] (7) the monthly average for fecal coliform in January 1999;[12] (8) monthly limitation for TSS

---

[6]The fifteen specific dates alleged for daily maximum NH$_3$-N violations are as follows: March 12 and 13, 1996; April 10, 1996; November 5 and 13, 1996; December 22, 1996; January 14, 1997; July 20 through 22, 1997; January 4 and 5, 1999; and March 27 through 29, 2001. Amended Complaint (doc. no. 20) ¶ 34.

[7]The twenty-two specific dates alleged for daily maximum TKN violations are as follows: October 7 and 8, 1996; November 13, 1996; December 22, 1996; July 20 through 22, 1997; November 10, 18, 24, and 25, 1997; December 27, 2000; January 5 and 6, 1998; January 4 and 5, 1999; and December 17 through 19 and 25 through 27, 2000. *Id.* ¶ 35.

[8]The seven months alleged for monthly average TKN violations are as follows: October 1996, November 1996, November 1997, February 1998, March 1998, January 1999, and December 2000. Complaint ¶ 36.

[9]The twelve specific dates alleged for daily maximum BOD violations are as follows: December 3, 17, and 18, 2000; January 16, 24, 29, 30, and 31, 2001; and February 13, 14, 15, and 21, 2001. Amended Complaint ¶ 37.

[10]Complaint ¶ 38,

[11]*Id.* ¶ 39. In its brief in opposition to defendant's motion for summary judgment, plaintiffs have additionally alleged that the DMRs in the record show that defendant violated the Permit's daily maximum effluent limitation for fecal coliform on at least one additional occasion in June 2001. Plaintiffs' Corrected Response in Opposition to Gold Kist's Motion to Dismiss/Motion for Summary Judgment (doc. no. 18) (hereinafter "Plaintiffs' Brief") at 5. This claimed violation would have occurred in the month prior to filing of the original complaint, although it is not expressly alleged therein. Plaintiffs appear to address this omission by suggesting that there is typically a two or three month delay for obtaining DMRs from ADEM. *See id.* at 8 n.2. However, such does not explain why this alleged violation was also not

in December 2001;[13] (9) the daily maximums for $NH_3$-N, TKN, and TSS on one or more unspecified dates in December 2001;[14] and (10) the daily maximum for BOD on one or more unspecified dates in October 2001.[15] Plaintiffs further claim that the Toxicity Test Results submitted by defendant to ADEM show that defendant has violated the terms of the Permit with respect to "toxicity" on at least the following occasions: January 20, 1998 (ninety violations); January 19, 1999 (ninety violations); July 27, 1999 (ninety violations); July 27, 1999 (ninety violations); October 26, 1999 (single violation); August 2000 (ninety violations); and November 2000 (ninety violations).[16] Finally, plaintiffs allege that defendant continues to discharge unpermitted amounts of pollutants from its Trussville facility into the tributary, in violation of the effluent standards and limitations set forth in the Permit.[17]

## C.   Other Alleged Violations of the Permit

In addition to the violations regarding effluent limitations alleged above, plaintiffs maintain in their original and amended complaints that defendant also has failed to comply with other terms and requirements of the Permit. More specifically, plaintiffs contend that Compliance Inspection Reports compiled by ADEM show that defendant has "continuously" failed to abide by the sampling, monitoring, reporting, and recordkeeping requirements of the Permit, with past violations occurring

---

included in the amended complaint, filed May 2002. In any event, the court recognizes that the original complaint does generally assert that defendant "continues to discharge . . . unpermitted amounts of pollutants . . . in violation of effluent standards and limitations contained in its NPDES permit." Complaint ¶ 1.

[12]*Id.* ¶ 40. Plaintiffs allege in their brief in opposition to defendant's motion for summary judgment that the DMRS in the record show that defendant violated the Permit's monthly average effluent limitation for fecal coliform in June 2001. Plaintiffs' Brief at 5. This violation is not expressly alleged in the original or amended complaint, but plaintiff have alleged generally that defendant continues to discharge in violation of the Permit. *See* n.9, *supra*.

[13]Amended Complaint ¶ 41a.

[14]*Id.* ¶¶ 34, 35, & 41a.

[15]*Id.* ¶ 37.

[16]Complaint ¶ 41.

[17]*Id.* ¶ 1.

on approximately twenty-three occasions between April 1996 and September 2000.[18]   Plaintiffs similarly assert that defendant has "continuously" failed to comply with the Permit's mandate to "at all times properly operate and maintain all facilities and systems of treatment and control," with past violations of such provision occurring on July 20 through 23, 1998, and on May 8 and 10, 2000.[19]

**D.     The Consent Order**

On November 30, 2000, defendant and ADEM entered into a consent order (hereinafter the "Consent Order"), purporting to settle an administrative enforcement proceeding ADEM had brought against defendant because of certain alleged violations of the Permit.[20]   Specifically, the Consent Order recites that ADEM had alleged that, between December 12, 1995 and February 22, 2000, defendant had violated the discharge limitations of the Permit on forty-eight "occasions," not otherwise specified.[21]   While defendant neither admitted nor denied that it had violated the discharge limitations of the Permit, defendant agreed to the Consent Order "in an effort to cooperate with [ADEM] and to comply with the provisions of the Alabama Water Pollution Control Act."[22] ADEM, in turn, stated that it was agreeing to the terms of the Consent Order in order to resolve subject violations and because it found that such was "in the best interest of the citizens of Alabama."[23]

Under the terms of the Consent Order, defendant agreed to several measures. First, it agreed to pay ADEM a civil penalty in the amount of $18,800 within thirty days after the Consent Order

---

[18]*Id.* ¶¶ 43, 45. In their summary judgment brief, plaintiffs contend that the Compliance Inspection Reports in the record indicate that defendant has also violated the Permit's sampling, monitoring, reporting, and recordkeeping requirements on an additional occasion, April 2, 2001. Plaintiffs' Brief at 6.

[19]*Id.* ¶¶ 46, 47, & 49.

[20]*See* Evidentiary Submission in Support of Gold Kist's Motion to Dismiss (hereinafter "Defendant's Evidentiary Submission"), Tab A.

[21]*Id.* ¶4.

[22]*Id.* ¶ 5.

[23]*Id.* ¶ 6.

became final.[24]  Second, defendant promised to prepare and submit, within sixty days from the date

of the Consent Order, an engineering report addressing the effects of cold weather on defendant's

wastewater treatment, and, a plan to implement measures improving treatment performance during

cold weather events, with said plan to be implemented within six months after ADEM completed

its review of the report.[25]  Third, defendant acknowledged that it would comply with the discharge

limitations of the Permit within 180 days of the date of the Consent Order.[26]  Finally, defendant

agreed that it would pay stipulated penalties to ADEM in the amount of $800 for each daily

maximum limitation violation, and $1,600 for each monthly average limitation violation that

occurred during the 365-day period following the effective date of the Consent Order.[27]

**E.      Actions Taken Pursuant to the Consent Order**

Defendant timely submitted to ADEM the engineering report contemplated by the Consent

Order.[28]  Defendant also alleges in its brief that the following events occurred after the Consent

Order was entered: (1) ADEM reviewed and verbally approved the engineering report in early

December 2000; (2) defendant began implementing the plan outlined in the report by installing

aerator covers, which were operational by February 16, 2001, and by installing an automated

chlorination/dechlorination system during May of 2001; and (3) defendant paid the $18,800 civil

penalty.[29]  Further, in the months following the entry of the Consent Order, ADEM notified

---

[24]*Id.* ¶ A.

[25]Defendant's Evidentiary Submission, Tab A, ¶ B.

[26]*Id.* ¶ C.

[27]*Id.* ¶ C.

[28]Defendant's Evidentiary Submission, Tab B.

[29]The court notes that defendant only makes these allegations in its brief.  *See* Defendant's Brief in Support of Gold Kist's Motion to Dismiss (doc. no. 11) (hereinafter "Defendant's Brief") at 2-3, 8-9.  However, statements of fact in brief, not in proper affidavit form, are not themselves evidence and cannot be considered on a motion for summary judgment in determining whether a genuine issue of material fact exists.  *See Helmich v. Kennedy*, 796 F.2d 1441, 1443 (11th Cir. 1986); *Direct Media Corp. v. Camden Tel. and Tel. Co., Inc.*, 989 F.Supp. 1211, 1217 (S.D. Ga. 1997).

defendant that it had violated the discharge limitations of the Permit, and that, as a consequence, defendant was liable under the Consent Order to pay stipulated penalties.[30] In particular, ADEM sent correspondence to defendant charging that the discharge limitations of the Permit had been exceeded as follows: (1) the daily maximum for BOD on three occasions in December 2000; (2) the monthly average for BOD for December 2000; (3) the daily maximum for TKN on six occasions in December 2000; (4) the monthly average for TKN in December 2000; (5) the daily maximum for "toxicity" on four occasions in December 2000; (6) the daily maximum for BOD on five occasions in January 2001; (7) the monthly average for BOD in January 2001; (8) the daily maximum for BOD on four occasions in February 2001; (9) the monthly average for BOD in February 2001; (10) the daily maximum for $NH_3$-N on three occasions in March 2001; (11) the "toxicity" test was "failed" in March 2001; (12) the daily maximum for fecal coliform was exceeded on one occasion in June 2001; and (13) the monthly average for fecal coliform was exceeded in June 2001.[31]  ADEM demanded that defendant pay $1,600 for each of the five monthly average violations, and $800 for each of the remaining twenty-seven violations: *i.e.,* a total of $22,400.[32]

## II. DISCUSSION

### A.    Citizen Suits Under the FWPCA

This action is brought pursuant to the "citizen suit" provision of the Federal Water Pollution Control Act ("FWPCA"), 33 U.S.C. § 1365(a), which generally authorizes "any citizen" to "commence a civil action on his own behalf . . . against any person . . . who is alleged to be in

---

Defendant has not cited the court to any admissible evidence tending to support any of these three assertions.  On the other hand, although plaintiffs have included a statement of "disputed facts" in their brief, they do not seem to challenge the truth of any of these assertions. *See* Plaintiffs Brief at 9-11.

[30]Defendant's Evidentiary Submission, Tab C.

[31]*Id.*

[32]*Id.*

violation of[33] . . . an effluent standard or limitation . . . ."[34]  The term "effluent standard or limitation" is defined to include "a permit or condition thereof issued under section 1342 [the NPDES provision] of this title . . . ." 33 U.S.C. § 1365(f)(6).  The district courts have subject matter jurisdiction over such citizen suits "without regard to the amount in controversy or the citizenship of the parties, to enforce such an effluent standard or limitation . . . and to apply any appropriate civil penalties under [33 U.S.C. § 1319(d)]."  33 U.S.C. § 1365(a).

## B.   Citizen Suit Preclusion Under 33 U.S.C. § 1319(g)(6)

The right to bring a citizen suit under § 1365(a) is circumscribed by 33 U.S.C. § 1319(g)(6), which provides in relevant part as follows:

**(A) Limitation on actions under other sections**

[A]ny violation—

. . . .

(ii) with respect to which a State has commenced and is diligently prosecuting an action under a State law comparable to this subsection, or

(iii) for which . . . the State has issued a final order not subject to further judicial review and the violator has paid a penalty assessed under . . .[a State law] comparable [to this subsection]

shall not be the subject of a civil penalty action under . . . section 1365 of this title.

---

[33]The Supreme Court has interpreted the "alleged to be in violation of" language of § 1365(a) to preclude "federal jurisdiction" over citizen suits seeking redress for "wholly past" violations of the FWPCA.  *Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Foundation, Inc.*, 484 U.S. 49, 57, 108 S.Ct. 376, 381 (1987).  A private plaintiff's complaint must include a good-faith allegation of "either continuous or intermittent violation,--that is, a reasonable likelihood that a past polluter will continue to pollute in the future."  *Id.*  Although it is not entirely clear whether an allegation of a present violation is truly a matter that goes to a federal court's subject matter jurisdiction, *see Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 90-91, 118 S.Ct. 1003, 1010-11 (1998), to the extent that it does, the court finds that such is not an impediment to the exercise of jurisdiction here.  Plaintiffs have expressly alleged that defendant continues to violate the conditions and limitations of the Permit.  *See* Complaint ¶¶ 1, 14, 31, 43, 47, 54.  There has been no suggestion that plaintiffs' allegations concerning the continuing nature of defendant's violations have not been made in good faith, and they are sufficient to confer jurisdiction for purposes of *Gwaltney*.  *See* 484 U.S. at 64, 108 S.Ct. at 385; *Atlantic States Legal Foundation, Inc. v. Tyson Foods, Inc.*, 897 F.2d 1128, 1135 (11th Cir. 1990).

[34]33 U.S.C. § 1365(a)(1) (footnote added).

33 U.S.C. § 1319(g)(6)(A)(ii) & (iii). The subsection that a State law must be "comparable to" for purposes of preclusion under §1319(g)(6)(A)(ii) and (iii) is 33 U.S.C. § 1319(g). That subsection, entitled "Administrative penalties," provides a mechanism whereby the Administrator of the United States Environmental Protection Agency ("Administrator") may assess civil penalties when she finds that a person has violated any condition or limitation in an NPDES permit. 33 U.S.C. § 1319(g)(1). Section 1319(g) also contains substantial provisions authorizing and facilitating public involvement in the process under which administrative civil penalties are assessed. In particular, it requires the following: (1) that the Administrator provide public notice of any proposed administrative penalty assessment order, as well as a reasonable opportunity for the public to comment upon such proposed order;[35] (2) that any person who comments on a proposed order be given notice of, and an opportunity to be heard and present evidence at, any hearing on the proposed penalty, if one is requested by the alleged violator;[36] (3) that if no hearing is so requested by the alleged violator, any person who comments on a proposed penalty order may, within thirty days of the issuance of a final order assessing a civil penalty, petition the Administrator to set aside her order and request and evidentiary hearing, which must be granted if the petition supports its petition with material evidence that was not previously considered by the Administrator;[37] and (4) that any person who comments on a proposed order may obtain judicial review of the final order in the federal courts, which are authorized to determine whether the Administrator's penalty decision is supported by substantial evidence and was within her discretion.[38]

---

[35]33 U.S.C. § 1319(g)(4)(A).

[36]*Id.* at § 1319(g)(4)(B).

[37]*Id.* at § 1319(g)(4)(C).

[38]*Id.* at § 1319(g)(8).

## C.    Contentions of the Parties

In its motion and initial brief in support thereof, defendant argues that the "diligent prosecution" bar of § 1319(g)(6)(A)(ii) (hereinafter "Subsection (ii)") applies to preclude plaintiffs' citizen suit.[39]  Specifically, defendant contends that the enforcement measures taken against it pursuant to the Consent Order demonstrate that ADEM has "commenced and is diligently prosecuting an action" under a state law that is "comparable to" 33 U.S.C. § 1319(g): namely Alabama Code § 22-22A-5(18).[40]  Plaintiffs responded to this line of argument by asserting in their opposition brief four reasons why Subsection (ii) does not foreclose this suit. First, plaintiffs argue that ADEM's prosecution of defendant has not been "diligent" within the meaning of the statute.[41] Second, plaintiffs contend that the language of Subsection (ii) purports only to foreclose those citizen suits founded upon "any violation" that is the subject of a similar state enforcement action.[42] Therefore, plaintiffs argue that this action should proceed insofar as it is based upon violations that are not encompassed within the Consent Order.[43]  Third, plaintiffs maintain that, on its face, the "diligent prosecution" bar applies to preclude only "a civil penalty action" brought by private parties.[44] Accordingly, plaintiffs contend that this action also should proceed to the extent that it seeks injunctive and declaratory relief.[45]  And finally, plaintiffs argue that defendant has not shown that ADEM's administrative action against defendant was taken pursuant to an Alabama law that is

---

[39]*See* Defendant's Motion to Dismiss (doc. no. 8) ¶ 7; Defendant's Brief (doc. no. 11).

[40]*Id.*

[41]*See* Plaintiffs' Brief (doc. no. 18) at 12-24, 29-30; *see also id.* at 33-34.

[42]*Id.* at 25-29.

[43]*Id.*

[44]*Id.* at 30-33.

[45]*Id.*

"comparable to" 33 U.S.C. § 1319(g).[46]

After plaintiffs filed their brief in opposition, defendant filed a motion for leave to file a reply thereto, with a reply brief appended. (Doc. no. 17.) In that reply brief, defendant argues for the first time that this citizen suit is precluded not only by the "diligent prosecution" bar of Subsection (ii), but also by the "paid penalty" bar of § 1319(g)(6)(A)(iii) (hereinafter "Subsection (iii)").[47]  In particular, defendant maintains that because it has, pursuant to the Consent Order, paid civil penalties ADEM assessed under an Alabama law comparable to 33 U.S.C. § 1319(g), plaintiffs' citizen suit is foreclosed regardless of whether ADEM's prosecution might be characterized as "diligent" for purposes of Subsection (ii).[48]

The court would remind defendant, however, that when a party moves either for dismissal pursuant to Rule 12(b)(6), or for summary judgment pursuant to Rule 56, the nonmovant generally must be alerted to the legal theory underlying the movant's challenge to his case and afforded a meaningful opportunity to respond before the court rules on the motion.[49]  Thus, a party normally may not raise new grounds for granting its motion in a reply brief.[50]  Where a party does raise new grounds in its reply, it is generally said that a court has two choices: it may either strike the new grounds, or it may permit the nonmoving party additional time to respond to the new grounds.[51]

---

[46]*Id.* at 34-37.

[47]*See* Reply Brief in Support of Gold Kist's Motion to Dismiss (hereinafter "Defendant's Reply") at 1-2, 11-12.

[48]*Id.* at 11-12.

[49]*See Neitzke v. Williams*, 490 U.S. 319, 329-30, 109 S.Ct. 1827, 1834 (1989); *Burns v. Gadsden State Community College*, 908 F.2d 1512, 1516 (11th Cir. 1990).

[50]*Reliance Ins. Co. of Illinois, Inc. v. Richfield Hospitality Services, Inc.*, 92 F. Supp. 2d 1329, 1332 (N.D. Ga. 2000); *International Telecommunications Exchange Corp. v. MCI Telecommunications Corp.*, 892 F. Supp. 1520, 1531 (N.D. Ga. 1995).

[51]*International Telecommunications Exchange Corp.*, *supra*. *See also Cia. Petrolera Caribe, Inc. v. Arco Caribbean, Inc.*, 754 F.2d 404, 410 (1st Cir. 1985); *Beaird v. Seagate Technology, Inc.*, 145 F.3d 1159, 1164 (10th Cir. 1998).

Here, however, the court chooses what it perceives to be a permissible third option:  simply deny the motion, even in light of the movant's new argument.

**D.     Violations Not Encompassed Within the Consent Order**

As a threshold matter, the court will briefly address plaintiffs' contention that § 1319(g)(6) cannot preclude their citizen suit to the extent that it is based upon violations of the Permit that the Consent Order does not purport to resolve.  The court agrees with plaintiffs that the plain language of § 1319(g)(6)(A) compels the interpretation that "any violation" that has not been the subject of state enforcement action may form the basis of a citizen suit.[52]  Thus, insofar as plaintiffs' action is founded upon any violations of the Permit that are not covered by the Consent Order, it cannot be foreclosed by Subsection (ii) or (iii).

While the terms of the Consent Order indicated that it is intended to settle the violations alleged therein, it recites only that defendant was alleged to have violated the "discharge limitations" of the Permit on forty-eight "occasions" between December 12, 1995 and February 22, 2000.  Thus, the Consent Order is less than clear in defining the precise violations it purports to settle.  Defendant has not sought to explain to the court how all of the violations alleged by plaintiffs in this action might conceivably be covered by the Consent Order.  Nor has defendant attempted to point to particular violations alleged by plaintiffs as being covered by the Consent Order.  Accordingly, the court concludes that defendant has failed to show how the Consent Order might entitle defendant to summary judgment, either in whole or even in part as to particular violations.  Finally, the court

---

[52]*See McAbee v. City of Fort Payne*, CV-01-PT-1045, doc. no. 32, slip op. at 16-17 n.15 (N.D. Ala. October 15, 2001) (noting its agreement with the asserted that citizens suits are barred "only if they are based on the *very same* standards, limitations, or orders for which the State has brought a civil enforcement action . . . ") (quoting *Frilling v. Village of Anna*, 924 F. Supp. 821, 836 (S.D. Ohio 1996) (emphasis in *Frilling*)); *North & South Rivers Watershed Ass'n v. Scituate*, 949 F.2d 552, 556 (1st Cir. 1991) ("The focus of the statutory bar to citizen suits [in § 1319(g)(6)(A)(ii)] is . . . on whether corrective action already taken and diligently pursued by the government seeks to remedy the same violations as duplicative civilian action").

also notes that the Consent Order references only violations of the Permit's "discharge limitations." This would seem to preclude the possibility that the Consent Order could be reasonably interpreted to cover other sorts of violations alleged by plaintiffs, such as that defendant violated the sampling, monitoring, reporting, and recordkeeping requirements of the Permit.

## E.    The Availability of Declaratory and Injunctive Relief

Plaintiffs also argue that § 1319(g)(6) cannot operate to bar this citizen suit insofar as it seeks declaratory and injunctive relief, as opposed to civil penalties.   The terms of § 1319(g)(6)(A) specifically provide that violations that have been the subject of certain types of enforcement actions brought by federal or state officials will foreclose a subsequent "civil penalty action under . . . [33 U.S.C. § 1365]." (Emphasis added.)  Thus, many courts have held that such language means that citizen suits under § 1365 are precluded only to the extent that they seek to recover "civil penalties" for the same violations addressed by a state or federal enforcement action, but that such suits may proceed insofar as they seek declaratory and injunctive relief.[53]  Even so, a few courts, including the First and Eighth Circuits, have held to the contrary, relying primarily upon broad statements of policy by the Supreme Court in *Gwaltney of Smithfield v. Chesapeake Bay Foundation, Inc.*,[54] to the effect that the general structure of the FWPCA suggests that citizen suits are intended to play a secondary role to government enforcement actions.[55]  This court agrees with the majority position.  Because

---

[53]*See Orange Env't, Inc., v. County of Orange*, 860 F. Supp. 1003, 1017-18 (S.D.N.Y. 19994); *Coalition for a Liveable West Side, Inc. v. New York City Dep't of Env't'l Prot.*, 830 F. Supp. 194, 197 (S.D.N.Y. 1993); *Atlantic States Legal Founaation, Inc. v. Hamelin*, 182 F. Supp. 2d 235, 248 (N.D.N.Y. 2001); *Friends of Frederick Seig Grove # 94 v. Sonoma County Water Agency*, 124 F. Supp. 2d 1161, 1163 (N.D. Cal. 2000); *Sierra Club v. Hyundai America, Inc.*, 23 F. Supp. 1177, 1179 (D. Or. 1997); *California Sportfishing Protection Alliance v. City of West Sacramento*, 905 F. Supp. 792, 806 (E.D. Cal. 1995); *United States v. Smithfield Foods, Inc.*, 965 F. Supp. 769, 791 (E.D. Va. 1997), affirmed in part and reversed in part on other grounds, 191 F.3d 516 (4th Cir. 1999).

[54]484 U.S. 49, 108 S.Ct. 376, 98 L.Ed. 2d. 306 (1987).

[55]*See Arkansas Wildlife Federation v. ICI Americas, Inc.*, 29 F.3d 376, 383 (8th Cir. 1994); *North & South Rivers Watershed Ass'n v. Scituate*, 949 F.2d 552, 557 (1st Cir. 1991); *Lockett v. E.P.A.*, 176 F. Supp. 2d 628, 636 (E.D. La. 2001).

the meaning of § 1319(g)(6)(A) appears plain on its face, and does not inherently conflict with the purpose of the FWPCA, general policy considerations cannot justify re-writing the statute to omit the words "civil penalty."[56]

## F.    Was ADEM's Prosecution "Under" a "Comparable" State Law?

As indicated previously, Subsection (ii) will bar a citizen suit based upon any violation for which the state has commenced and is diligently prosecuting the defendant in an action "under" a state law that is "comparable to" 33 U.S.C. § 1319(g).[57] Similarly, Subsection (iii) will bar a citizen suit based upon any violation for which the state has issued a final order not subject to further judicial review, and, the defendant has paid a penalty assessed "under" a State law that is "comparable to" 33 U.S.C. § 1319(g).[58] Thus, the applicability of Subsections (ii) and (iii) both depend upon the existence of a State law that is "comparable to" § 1319(g), and "under" which a State either is taking (in the case of Subsection (ii)), or has taken (in the case of Subsection (iii)),

---

[56]See California Sportfishing, 905 F. Supp. at 806; Coalition for a Liveable West Side, 830 F. Supp. at 197. Furthermore, because the meaning of the statute is plain, the court need not resort to an examination of legislative history to support its interpretation. Nonetheless, the court would note that the 1986 House Conference Report, approved unanimously by both the House and the Senate, described the citizens suit preclusion language (incorporated into the final product) as follows:

> No one may bring an action to recover civil penalties under section 309(b) and (d), 311(b), or 505 [citizen suits] of this Act for any violation with respect to which the Administrator has commenced and is diligently prosecuting an administrative civil penalty action, or for which the Administrator has issued a final order not subject to further judicial review (and for which the violator has paid the penalty). *This limitation applies only to an action for civil penalties for the same violations which are the subject of the administrative penalty proceeding. It would not . . . apply to: 1) an action seeking relief other than civil penalties (e.g., an injunction or declaratory judgment).*

H.R. Conf. Rep. No. 99-1004, at 133 (1986) (emphasis added) (quoted in *Old Timer, Inc. v. Blackhawk-Central City Sanitation Dist.*, 51 F. Supp. 2d 1109, 1114 (D. Colo. 1999)).

[57]33 U.S.C. § 1319(g)(6)(A)(ii). *See Arkansas Wildlife Federation v. ICI Americas, Inc.*, 29 F.3d 376, 379-82 (8th Cir. 1994); *North & South Rivers Watershed Ass'n, Inc. v. Town of Scituate*, 949 F.2d 552, 555-56 (1st Cir. 1992).

[58]33 U.S.C. § 1319(g)(6)(A)(iii). *See California Sportfishing Protection Alliance v. City of West Sacramento*, 905 F. Supp. 792, 803-05 (E.D. Ca. 1995); *Sierra Club v. Colorado Refining Co.*, 838 F. Supp. 1428, 1436-37 (D. Colo. 1993); *Saboe v. State of Oregon*, 819 F. Supp. 914, 918 (D. Or. 1993).

certain administrative enforcement action against the defendant.  However, if it cannot be said either that the State does not have a state law that is "comparable to" § 1319(g), or that the State did not act "under" such a law, then neither Subsection (ii) nor Subsection (iii) will bar a citizen suit against the defendant.[59]

Courts agree with virtual unanimity that, in order to be deemed "comparable to" § 1319(g) for purposes of preclusion of citizen suits under § 1319(g)(6)(A), a state law must, at a minimum, contain some type of notice and public participation provisions that safeguard the substantive interests of citizens in enforcement actions.[60]  There is, nevertheless, a split of authority with regard to just how similar a state's public notice and participation provisions must actually be to those of § 1319(g) before the state law will be deemed to qualify as "comparable."  Some courts have read the comparability requirement relatively permissively, suggesting that a state law may allow for preclusion of a subsequent citizen suit even though the law contains only an *ex post facto* right to intervene, no public notice at any time, and no opportunity to comment on a proposed order.[61]  In so

---

[59]*See Jones v. City of Lakeland, Tennessee*, 224 F.3d 518, 523-24 (6th Cir. 2000); *United States v. Smithfield Foods, Inc.*, 191 F.3d 516, 524-26 (4th Cir. 1999); *Knee Deep Cattle Co., Inc. v. Bindana Inv. Co. Ltd.*, 94 F.3d 514, 517 (9th Cir. 1996); *Citizens for a Better Environment-California v. UNOCAL*, 83 F.3d 1111, 1116-18 (9th Cir. 1996).

[60]*Scituate*, 949 F.2d at 556 n.7. *See also Jones*, 224 F.3d at 523 (indicating that comparability requires that "the overall State regulatory scheme affords interested and/or adversely affected citizens the safeguard of a meaningful opportunity to participate in the administrative enforcement process"); *ICI Americas*, 29 F.3d at 381 (suggesting that a state law is comparable to § 1319(g) if the state's "overall regulatory scheme affords significant citizen participation, even if the state law does not contain precisely the same public notice and comment provisions as those found in the federal CWA"); *L.E.A.D. v. Exide Corp.*, 1999 WL 124473, *31 (E.D. Pa. 1999) and cases cited therein; *United States v. Smithfield Foods, Inc.*, 965 F. Supp. 769, 793 (E.D. Va. 1997) and cases cited therein, aff'd in relevant part 191 F.3d 516 (4th Cir. 1999); *Atlantic States Legal Found. v. Universal Tool & Stamping Co.*, 735 F. Supp. 1404, 1415 (N.D. Ind. 1990) ("[I]n order to be comparable, a State law must provide for a right to a hearing and for public notice and participation procedures similar to those set forth in section [1319(g)] . . . (quoting 133 Cong. Rec. S737 (daily ed. Jan. 14, 1987)).  *But see Atlantic States Legal Foundation v. Tyson Foods, Inc.*, 682 F. Supp. 1186, 1187 (N.D. Ala. 1988) (Guin, J.) (concluding summarily that Alabama law has a law comparable to § 1319(g) based apparently only upon the fact that Alabama law authorizes ADEM to impose civil penalties though administrative order, without discussing whether Alabama law contains any provisions regarding public notice or participation analogous to the federal act).

[61]*See ICI Americas*, 29 F.3d at 381-82; Scituate, 949 F.2d at 556 n.7. *See also Sierra Club v. Colorado Refining Co.*, 838 F. Supp. 1428, 1435 (D. Colo. 1993); *Saboe v. State of Oregon*, 819 F. Supp. 914, 918 (D. Or. 1993).

doing, such courts have relied upon broad statements in *Gwaltney* regarding the primacy of governmental enforcement under the FWPCA.[62] This court, however, agrees with others that have been more strict in their interpretation, holding that Congress's inclusion of provisions in § 1319(g) that not only authorize, but also affirmatively facilitate, public participation at the significant stages of the decisionmaking process implies that, in order for a state law to be truly "comparable," it must likewise include: provisions for mandatory public notice; relatively broad participation rights for interested third parties prior to the issuance of a final administrative order assessing a civil penalty; and, for third persons to have a right to judicial review of a final penalty order.[63]

The Alabama laws that defendant contends are "comparable to" 33 U.S.C. § 1319(g) are found in Alabama Code §§ 22-22A-5(18) and 22-22A-7(c), part of the Alabama Water Pollution Control Act. Under § 22-22A-5(18), ADEM is authorized to issue an administrative order assessing a civil penalty against any person who violates, among other things, any condition of any ADEM permit.[64] Any civil penalty so assessed may not be less than $100 per violation, nor exceed $25,000 per violation, with each day a violation continues constituting a separate violation, and the total penalty assessed by administrative order may not exceed $250,000.[65] In determining the amount of any penalty, ADEM is required to consider: the seriousness of the violation, including any irreparable harm to the environment and any threat to the health or safety of the public; the standard of care manifested by the violator; the economic benefit which delayed compliance may have

---

[62]*See ICI Americas*, 29 F.3d at 380; Scituate, 949 F.2d at 555-56; *Colorado Refining Co.*, 838 F. Supp. at 1436; *Saboe*, 819 F. Supp. at 916.

[63]*See, e.g., Jones*, 224 F.3d at 523-24; *Smithfield Foods, Inc.*, 965 F. Supp. 793, aff'd in relevant part 191 F.3d 516 (4th Cir. 1999); *Save Our Bays and Beaches v. City and County of Honolulu*, 904 F. Supp. 1098, 1132 (D. Haw. 1994); *N.R.D.C. v. Vygen Corp.*, 803 F. Supp. 97, 101-02 (N.D. Ohio 1992); *Universal Tool & Stamping*, 735 F. Supp. 1415-16.

[64]Ala. Code § 22-22A-5(18)(a).

[65]Ala. Code § 22-22A-5(18)(c).

conferred; the nature, extent, and degree of success of the violator's efforts to minimize or mitigate the effects of the violation upon the environment; the violator's history of previous violations; and, the ability of the violator to pay the penalty.[66]

Like 33 U.S.C. § 1319(g), Alabama law requires that before an administrative order assessing a civil penalty is issued, the alleged violator must be afforded notice of, and an opportunity to be heard on, the proposed order.[67]  But there is no provision in Alabama law authorizing notice to, or participation by, members of the public or other third parties *prior to* ADEM's issuance of an administrative order assessing a civil penalty under § 22-22A-5(18).  Rather, Alabama law specifies only that "[n]ot later than 15 days *after issuance*" of an ADEM order imposing civil penalties, "notice thereof must be published for *one day* in a newspaper of general circulation in the county where the violation occurred."[68]  Such after-the-fact "notice" is paltry at best.

Section 22-22A-7(c) provides that "any person aggrieved by an administrative action" of ADEM is entitled to pursue an appeal of such action at a hearing before the Environmental Management Commission ("EMC"), a seven-member body within ADEM that is empowered to hear administrative appeals of agency actions.[69]  The Alabama Supreme Court has stated that the phrase "any person aggrieved by an administrative action" in § 22-22A-7(c) is to be interpreted "broadly," and that, in order to appeal an ADEM decision, citizens need not show that the action in question

---

[66]*Id.*

[67]*Compare* 33 U.S.C. § 1319(g)(2)(A) & (B) with Ala. Code § 22-22A-5(18)(a).

[68]Ala. Code § 22-22A-5(18)(a) (emphasis added).

[69]See Ala. Code §§ 22-22A-6(a)(4); 22-22A-7(c).  A request for such a hearing before the EMC must be filed within 15 days after notice to the affrieved party by ADEM of its action, or if notice to the aggrieved person is given or required, within 30 days of the contested administrative action.  *Id.* § 22-22A-7(c)(1).

adversely affected their legal or equitable interests in land.[70] If ADEM's penalty assessment is appealed to the EMC by the violator, a third party may intervene in that proceeding if he can demonstrate that: (1) his presence would not prejudice the timely adjudication of the rights of the original parties; (2) that he would be aggrieved by a final order; and (3) that his interests are not being adequately represented by the original parties.[71] In the administrative appeal itself, the EMC has plenary power to consider all issues relevant to ADEM's action in a *de novo* hearing, with the petitioner bearing the burden of going forward with the evidence and establishing its contentions to the reasonable satisfaction of the trier of fact.[72] Once the EMC issues an order modifying, approving, or disapproving of ADEM's contested action, such order constitutes a "final action" of ADEM, and it is subject to judicial review in the Alabama courts.[73]

This judicial officer is aware of two decisions, both authored by members of this court, addressing whether Alabama has a law that is "comparable to" § 1319(g) for purposes of precluding a citizen suit under § 1319(g)(6). One is Judge Guin's opinion in *Atlantic States Legal Foundation v. Tyson Foods, Inc.*, wherein he ruled that § 22-22A-5(18) is "comparable to" 33 U.S.C. § 1319(g),

---

[70]*Ex parte Fowl River Protective Ass'n*, 572 So. 2d 446, 456 n.2 (Ala. 1990). In *Fowl River*, the Alabama Supreme Court expressly rejected as "incorrect" a contrary interpretation of Alabama law by the Eleventh Circuit in *Save Our Dunes v. Alabama Dep't of Environmental Management*, 834 F.2d 984, 987-89 (11th Cir. 1987), which had held that civic-minded and environmental organizations were not "aggrieved" persons for purposes of § 22-22A-7(c). *Id.* Further, while the Alabama Supreme Court court declined to delineate the precise contours of who is a "person aggrieved," it stated that it found that the two plaintiff organizations in the case, the Fowl River Protective Association and the South Alabama Seafood Association, both "clearly" had standing to appeal a decision by ADEM involving the issuance of an NPDES permit to the Board of Water and Sewer Commissioners of the City of Mobile. *Id. See also Ex parte Marshall Durbin & Co. of Jasper, Inc.*, 537 So. 2d 496 (Ala. 1988).

[71]Ala. Admin. Code r. 335-2-1-.08(6).

[72]*Id.* r.335-2-1-.14(6); *Bates Motel, Inc. v. Environmental Management Commission*, 596 So. 2d 924, 927 (Ala. Civ. App. 1991). Although strict court rules of evidence do not apply at the hearing before the EMC, the parties are given the opportunity to give opening and closing statements; present evidence on material issues; and cross-examine witnesses, who give testimony under oath. Ala. Admin. Code r. 335-2-1-.14(5), (6), (7), & (8); Ala. Code § 22-22A-7(c)(5).

[73]Ala. Code § 22-22A-7(c)(6).

so as to allow a prosecution by ADEM to foreclose a subsequent citizen suit for the same violations.[74] The other is a more recent, unpublished opinion authored by Judge Propst in *McAbee v. The City of Fort Payne, Ala.*, which reached the opposite conclusion.[75] Of course, while these opinions may contain persuasive reasoning, neither is binding authority.[76]

As Judge Propst recognized, the persuasive value of Judge Guin's opinion is diminished by the fact that he did not set forth any analysis comparing the substantive provisions of the relevant state and federal laws, other than to say that both authorized the imposition of administrative penalties.[77] Upon consideration, this court agrees with Judge Propst that the provisions of Alabama law are not truly comparable to § 1319(g), based primarily upon the fact that, unlike the federal scheme, Alabama does not mandate public notice of an order assessing a civil penalty or authorize participation by third persons until after an administrative order has been issued.[78] The court would add that even the form of the notice that is then required by Alabama law, publication for only *one day* in any newspaper of general circulation in the county where the violation occurred, seems something less than reasonably calculated to apprize the public of ADEM's enforcement action, or to encourage citizen involvement. Because the court finds that Alabama Code §§ 22-22A-5(18) and 22-22A-7(c) are not comparable to 33 U.S.C. § 1319(g), ADEM's administrative enforcement action against defendant does not bar plaintiffs' citizen suit.

Furthermore, even if it could be said that the subject provisions of state law established an

---

[74]*Tyson Foods*, 682 F. Supp. at 1187.

[75]CV-01-PT-1045, slip op. (doc. no. 32) at 23-31 (N.D. Ala. Oct. 15, 2001). Judge Propst's opinion is currently on interlocutory appeal to the Eleventh Circuit.

[76]*See Fox v. Acadia State Bank*, 937 F.2d 1566, 1570 (11th Cir. 1991).

[77]*McAbee*, slip op. at 23; *Tyson Foods*, 682 F. Supp. at 1187.

[78]*See McAbee*, slip op. at 28-29.

-20-

administrative penalty assessment scheme that is "comparable to" that set forth in 33 U.S.C. § 1319(g), in order for defendant to be entitled to summary judgment, the evidence would still have to establish that ADEM's prosecution and collection of penalties in this case occurred "under" the comparable law.  There also is a split of authority with regard to what types of state administrative enforcement actions occur "under" a comparable law for purposes of § 1319(g)(6).  Again relying upon statements in *Gwaltney*, some courts have indicated that, as long as a state has enacted laws that authorize the imposition of civil penalties pursuant to an administrative scheme that is comparable to § 1319(g), a citizen suit for civil penalties may be precluded if the state is diligently pursuing some form of administrative enforcement against the violator, even though the state has not actually sought to impose civil penalties, or if the state has imposed some form of penalty pursuant to a consent agreement with the violator that may not have triggered any public notice or participation provisions of state law.[79]  This court finds itself in accord with the reasoning of other courts, holding that the plain language of § 1319(g)(6) and the penalty assessment structure of § 1319(g) unambiguously require not only that a state must have enacted a comparable state law, but also that the state must have also actually assessed a civil penalty, and that such penalty assessment must have occurred "under," that is, pursuant to the authority of, the state's particular comparable law.[80]

---

[79]*See Comfort Lake Ass'n, Inc. v. Dresel Contracting, Inc.*, 138 F.3d 351, 357 (8th Cir. 1998); *ICI Americas, 29 F.3d* at 379-82; *Colorado Refining Co.*, 852 F. Supp. at 1484-85; *New York Coastal Fisherman's Ass'n v. New York City Dep't of Sanitation*, 772 F. Supp. 162, 165 (S.D.N.Y. 1991); *Tyson Foods*, 682 F. Supp. at 1187-88.

[80]*See Knee Deep Cattle Co.*, 94 F.3d at 517; *Citizens for a Better Environment v. UNOCAL*, 83 F.3d 1111, 1115-18 (9th Cir. 1996); *North Carolina Shellfish Growers Ass'n v. Holly Ridge Associates, L.L.C.*, 200 F. Supp. 2d 551, 558 (E.D.N.C. 2001); *Old Timer, Inc. v. Blackhawk-Central City Sanitation Group*, 51 F. Supp. 2d 1109, 1113-14 (D. Colo. 1999).  *See also Washington Public Interest Research Group v. Pendleton Woolen Mills*, 11 F.3d 883, 886 (9th Cir. 1993) (holding that a citizen suit was not barred under § 1319(g)(6)(A)(i) based upon the EPA's issuance of a compliance order that did not impose civil penalties, as such order was issued pursuant to the authority of 33 U.S.C. § 1319(a), not § 1319(g)).

Even assuming that Alabama Code § 22-22A-5(18) is deemed comparable to 33 U.S.C. § 1319(g), it is simply unclear from the evidence in the record at present whether ADEM's prosecution of, or any collection of monetary penalties from, defendant actually occurred "under" the procedures required by § 22-22A-5(18), in particular those mandating public notice. As the Ninth Circuit recognized in *Citizens for a Better Environment v. UNOCAL*, because "§ 1319 mandates various notice and comment procedures . . . [u]nless any penalty is assessed [by the state] according to the particular provisions of state law that is comparable to § 1319(g), there is no guarantee that the public will be given the requisite opportunity to participate . . . ."[81] By entering the Consent Order, ADEM has not just notified defendant of specific violations of the Permit, pursuant to its power under § 22-22A-5(10), and then unilaterally imposed civil penalties upon defendant for those violations, pursuant to its authority under § 22-22A-5(18), with such order then being subject to administrative and judicial review by any "person aggrieved" thereby under § 22-22A-7(c). It is clear that § 22-22A-5(18)(a) mandates public notice, albeit scant notice, of such unilateral assessments. On its face, however, the Consent Order constitutes a bilateral agreement between ADEM and defendant, whereby ADEM has alleged that defendant has committed certain violations and defendant has consented to pay a civil penalty for past violations, to take additional steps in an attempt to prevent future violations, and to pay stipulated civil penalties for any violations that might occur in the succeeding 365 days.[82]  However, aside from the Consent Order's recitation that it was issued pursuant to the authority of § 22-22A-5(18), along with three other sections of the Alabama Code, there is no evidence in the record that might suggest that the Consent Order was considered

---

[81]83 F.3d at 1118.

[82]ADEM is authorized by Alabama Code § 22-22A-5(9) to enter into agreements with private individuals and by § 22-22A-5(12) to settle enforcement actions.

to have triggered even the limited public notice requirement of § 22-22A-5(18)(a).  There has been

no evidence presented that any form of public notice was, in fact, afforded, nor is there any

indication that plaintiffs otherwise had actual notice of the Consent Order with the thirty-day period

that they might have filed an administrative appeal to the EMC pursuant to § 22-22A-7(c), assuming

that plaintiffs would qualify as persons "aggrieved" by the Consent Order so as to confer standing.

Because the evidence in the record at this point does not establish that the public notice requirement

of § 22-22A-5(18) was followed with respect to the issuance of the Consent Order, the court cannot

determine, as a matter of law, that such order was issued "under" a comparable law for purposes of

§ 1319(g)(6).[83]  Thus, defendant is not now entitled to summary judgment.

Also, even assuming that Alabama law is comparable to § 1319(g), and further assuming that

the public notice procedure of Alabama Code § 22-22A-5(18)(a) was followed with respect to

issuance of the Consent Order, the court does not believe that any stipulated penalties defendant

might have paid for violations that occurred in the year following the entry of the Consent Order

were assessed  under a state law comparable to § 1319(g), so as to foreclose under Subsection (iii)

a citizen suit for those violations.  It is manifest that both Alabama Code § 22-22A-5(18) and 33

---

[83]By so ruling, the court does not wish to be understood as holding that ADEM's pursuit or receipt of civil penalties for past violations through the vehicle of compromise and settlement necessarily precludes the possibility that such assessment will not bar a subsequent citizen suit for the same violations.  Assuming, of course, that the court is wrong that the limited public notice and participation requirements of §§ 22-22A5(18) and 22-22A-7(c) render those section not comparable to 33 U.S.C. § 1319(g), the court could imagine that a citizen suit might be foreclosed if public notice of a settlement or consent order were given as required by § 22-22A-5(18)(a) with unilateral penalty assessment orders, and interested parties could then, pursuant to § 22-22A-7(c), obtain a meaningful examination of the settlement order in a *de novo* proceeding before the EMC and then review in the Alabama courts.  The court recognizes that compromise and settlement is not only a valid and favored means of resolving disputes, but is also a significant resource-conserving enforcement tool for ADEM, and it would lose most or all of its effectiveness if the violator knew that its payment of a civil penalty by consent could not ever bar a citizen suit seeking penalties for the same vioations.  *See Comfort Lake Ass'n v. Dresel Contracting*, 138 F.3d 351, 358 (8th Cir. 1998).  However, to the extent that ADEM and violators might use compromise and settlement as a means to avoid the Alabama law public notice and participation requirements associated with unilateral penalty assessment orders, the court will not sanction such action by giving ADEM settlement orders preclusive effect in a subsequent citizen suit based on the same violations.

-23-

U.S.C. § 1319(g) contemplate schemes whereby the agency becomes aware of a past or present violation, and then seeks to assess a civil penalty therefor, with the amount of the penalty being determined *ex post facto*, based upon specific, statutorily enumerated consideration. Both Alabama and federal law also provide for certain mandatory public notice and participation procedures, affording interested third parties an opportunity to contest both the penalty assessment and the amount thereof, after the violations and the circumstances surrounding them become known.

But the Consent Order's use of stipulated penalties for future violations, whether or not authorized under Alabama law, is both without analogue in § 1319(g), and, effectively short-circuits the provisions in Alabama law that allow the citizenry a chance to challenge the propriety of the amount of such a penalty assessment. Even if, as required by § 22-22A-5(18), the public received notice within fifteen days of the Consent Order's issuance that defendant had agreed to pay stipulated penalties of a given amount for future violations, because the subject violations have not yet occurred, there is virtually no way for an interested third party to argue or marshal evidence at that point to show that the amount to be assessed by ADEM is inappropriate in light of all the factors ADEM is statutorily required to consider under § 22-22A-5(18)(c) when setting the amount of a penalty: *i.e.*, the seriousness of the violation, including any irreparable harm to the environment and any threat to the health or safety of the public; the standard of care manifested by the violator; the economic benefit which delayed compliance may have conferred; the nature, extent, and degree of success of the violator's efforts to minimize or mitigate the effects of the violation upon the environment; the violator's history of previous violations; and the ability of the violator to pay the

-24-

penalty.[84] It is only *after* a violation actually occurs that the attendant circumstances informing these factors can be assessed, and it is only at that time that it may be apparent that the stipulated penalty amount does not fit the seriousness of the violation, or the violators culpability.   However, while it is undisputed that ADEM demanded that defendant pay stipulated penalty amounts for any daily maximum and monthly average violations occurring in the year following the entry of the Consent Order, it does not appear that the public was given any meaningful opportunity to challenge the amount of those penalties after the violations occurred and the corresponding penalties were actually assessed. Rather, it seems that ADEM simply "assessed" these penalties by direct correspondence with defendant without issuing any further official orders of which the public was given notice. Because the court finds that the Consent Order's use of stipulated penalties for future violations is without parallel in § 1319(g), and, also fails to afford interested third parties notice or any meaningful opportunity to challenge the amount of such a penalty assessment after the violation occurs, penalties for violations that occurred in the year following the entry of the Consent Order were not assessed under a state law comparable to 33 U.S.C. § 1319(g).  Accordingly, plaintiffs' citizen suit is not barred by § 1319(g)(6), to the extent it is founded upon such violations, if Alabama has enacted a law comparable to § 1319(g).

### III. CONCLUSION

Based on the foregoing, the court has determined as follows: defendant's motion for leave to file a reply brief is due to be granted; defendant's motion for summary judgment is due to be denied; and defendant's motion to strike portions of Barry Sulkin's affidavit is deemed moot.  An

---

[84]One might also wonder how ADEM could be said to have given the statutorily required consideration to each of these factors when it sets a fixed penalty amount for a violation that has not yet occurred.  Thus, it is questionable whether ADEM's assessment of stipulated penalties for future violations is comparable with the penalty assessment factors that must be considered under 33 U.S.C. § 1319(g)(3).

-25-

appropriate order consistent with this memorandum opinion will be entered.

DONE this ___30th___ day of July, 2002.

_____
United States District Judge